PUBLIC VERSION

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE JOSEPH A. LAROSKI, JR., JUDGE

| | |
|---|---|
| DEER PARK GLYCINE, LLC,<br><br>　　　　　　　　　　PLAINTIFF,<br><br>　V.<br><br>UNITED STATES,<br><br>　　　　　　　　　　DEFENDANT. | COURT NO. 24-00016<br><br>**PUBLIC VERSION**<br><br>BUSINESS PROPRIETARY INFORMATION HAS BEEN REDACTED FROM PAGE 20. |

PLAINTIFF'S REPLY BRIEF
TO DEFENDANT'S RESPONSE TO THE MOTION FOR JUDGMENT ON THE AGENCY RECORD
AND RESPONSE BRIEF TO DEFENDANT'S MOTION TO DISMISS

David M. Schwartz
Michelle Li
Kerem Bilge

**THOMPSON HINE LLP**

1919 M Street, NW, Suite 700
Washington, DC  20036-3537
Telephone:　(202) 263-4170
Telefax:　　 (202) 331-8330
Email:　　　David.Schwartz@ThompsonHine.com

*Counsel to Deer Park Glycine, LLC*

Dated:  December 3, 2024

PUBLIC VERSION

TABLE OF CONTENTS

Page

INTRODUCTION ............................................................................................................. 1

STATEMENT OF THE ISSUES ......................................................................................... 2

STATEMENT OF FACTS ................................................................................................. 2

SUMMARY OF THE ARGUMENT .................................................................................... 4

ARGUMENT ................................................................................................................... 5

I.    THE COURT POSSESSES JURISDICTION OVER THIS APPEAL .................................. 5

    A.    STANDARD OF REVIEW ..................................................................... 5

    B.    COMMERCE'S ARGUMENT THAT SECTION 1581(C) JURISDICTION IS NOT
        APPROPRIATE LACKS SUPPORT ........................................................... 6

    C.    IN THE ALTERNATIVE, THE COURT POSSESSES JURISDICTION OVER
        THE APPEAL UNDER SECTION 1581(I) .................................................. 8

II.   THE COURT SHOULD DETERMINE THAT COMMERCE'S FINDING IS INCONSISTENT
      WITH ITS REGULATIONS AND OTHERWISE ARBITRARY AND CAPRICIOUS ...................... 14

III.  COMMERCE'S REFUSAL TO INITIATE IS OTHERWISE UNREASONABLE AND
      AN ABUSE OF ITS DISCRETION ............................................................................ 19

IV.   MULTIPLE SCOPE RULING PROCEEDINGS INITIATED BY COMMERCE ON THE SAME
      OR  SIMILAR PRODUCTS IN THE PAST ARE INSTRUCTIVE FOR THIS CASE .......................... 22

CONCLUSION ............................................................................................................... 26

PUBLIC VERSION

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott Laboratories v. Gardner,*
   387 U.S. 136, 87 S. Ct. 1507, 18 L.Ed.2d 681 (1967)................................................5

*Appleton Papers, Inc. v. United States,*
   37 C.I.T. 1034 (2013) ..............................................................................................21

*Asociacion Colombiana de Exportadores de Flores (Asocoflores) v. United States,*
   13 Ct. Int'l Trade 584, 717 F. Supp. 847 (1989), *aff'd,* 901 F.2d 1089
   (Fed.Cir.1990).........................................................................................................5

*Auer v. Robbins,*
   519 U.S. 452, 117 S. Ct. 905, 137 L. Ed. 2d 79 (1997).........................................18

*Cedars-Sinai Med. Center v. Watkins,*
   11 F.3d 1573 (Fed. Cir. 1993)....................................................................................9

*Fujitsu Gen. Am., Inc. v. United States,*
   283 F.3d 1364 (Fed. Cir. 2002)..................................................................................6

*Glycine & More, Inc. v. United States,*
   107 F. Supp. 3d 1356 (Ct. of Int'l Trade 2015) ......................................................18

*Hutchison Quality Furniture, Inc. v. United States,*
   827 F.3d 1355 (Fed. Cir. 2016)..................................................................................9

*Juancheng Kangtai Chem. Co. v. United States,*
   932 F.3d 1321 (Fed. Cir. 2019)..................................................................................9

*Judulang v. Holder,*
   565 U.S. 42 (2011)...................................................................................................21

*Land v. Dollar,*
   330 U.S. 731, 67 S. Ct. 1009, 91 L. Ed. 1209 (1947).............................................9

*Magnola Metallurgy, Inc. v. United States,*
   508 F.3d 1349 (Fed. Cir. 2007)................................................................................21

*McNutt v. Gen. Motors Acceptance Corp.,*
   298 U.S. 178, 56 S. Ct. 780, 80 L. Ed. 1135 (1936)................................................8

*Meridian Prods. LLC v. United States*,
   851 F.3d 1375 (Fed. Cir. 2017)................................................................................10

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
   463 U.S. 29, 103 S. Ct. 2856, 77 L. Ed. 2d 443 (1983).........................................22

*OMG, Inc. v. United States*,
   972 F.3d 1328 (Fed. Cir. 2020)................................................................................10

*Parkdale Int'l Ltd. vs. United States*,
   31 Ct. Int'l Trade 1229, 508 F. Supp. 2d 1338 (2007)..............................................6

*Target Corp. v. United States*,
   578 F. Supp. 2d 1369 (Ct. of Int'l Trade 2008) ......................................................25

*Thomas Jefferson Univ. v. Shalala*,
   512 U.S. 504 (1994)..................................................................................................18

*Trustees in Bankruptcy of North American Rubber Thread Co. v. United States*,
   593 F.3d 1346 (Fed. Cir. 2010)...........................................................11, 12, 13, 14

*Wheatland Tube Co. v. United States*,
   161 F.3d 1365 (Fed. Cir. 1998)................................................................................21

*Wuxi Seamless Oil Pipe Co. v. United States*,
   893 F. Supp. 2d 1347 (Ct. Int'l Trade 2013) ............................................................9

**Statutes**

19 U.S.C.S. § 1516a(a)(2)(B)(vi).........................................................................5, 7, 8

19 U.S.C. § 1516(a) .......................................................................................................8

19 U.S.C. § 1516a .........................................................................................................6

19 U.S.C. § 1516a(a)(2)(A) ...........................................................................................6

19 U.S.C. § 1516a(a)(2)(B) ...........................................................................................6

28 U.S.C. § 1581 ...................................................................................................5, 8, 9

28 U.S.C. § 1581(i) ............................................................................................. *passim*

28 U.S.C. § 1581(i)(1)(D).............................................................................................8

28 U.S.C. § 1581(c) ............................................................................................ *passim*

PUBLIC VERSION

**Regulations**

19 C.F.R. § 351.225(d) ........................................................................................15

19 C.F.R. § 351.225(d)(1)(i) ............................................................................ *passim*

19 C.F.R. § 351.225(m)(1) ................................................................................11

*Regulations To Improve Administration and Enforcement of Antidumping and Countervailing Duty Laws*, 86 Fed. Reg. 52300 (Dep't of Commerce Sept. 20, 2021) .............................................................................................11, 17

*Regulations To Improve Administration and Enforcement of Antidumping and Countervailing Duty Laws*, 85 Fed. Reg. 49472 (Dep't of Commerce Aug. 13, 2020) .............................................................................................16, 17

**Other Authorities**

Commerce's Letter, "Glycine from the People's Republic of China, India, Japan, and Thailand: Determination to Reject the Scope Ruling Application on Calcium Glycinate" (Dec. 28, 2023)........................................................14

Court of International Trade Rule 81(k) ...............................................................1

Memorandum from James Terpstra to Christian Marsh, "Final Scope Ruling on Curtain Wall Units that are Produced and Imported Pursuant to a Contract to Supply a Curtain Wall" (March 27, 2014) ...............................................24

Memorandum from John Conniff to Christian Marsh, "Final Scope Ruling on Curtain Wall Units and Other Parts of a Curtain Wall System" (Nov. 30, 2012) .............................................................................................24

*Notice of Scope Rulings*, 78 Fed. Reg. 32372 (Dep't of Commerce May 30, 2013)....................23

*Notice of Scope Rulings*, 79 Fed. Reg. 30821 (Dep't of Commerce May 29, 2014)....................24

*Petroleum Wax Candles from the People's Republic of China*, Final Scope Ruling, A-570-504, "Avon Products, Inc." (Nov. 17, 2003)........................................25

*Petroleum Wax Candles from the People's Republic of China, Final Scope Ruling*, A-570-504, "Leader Light, Inc." (Dec. 12, 2002).......................................25

PUBLIC VERSION

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE JOSEPH A. LAROSKI, JR., JUDGE

| | |
|---|---|
| DEER PARK GLYCINE, LLC,<br><br>        PLAINTIFF,<br><br> V.<br><br>UNITED STATES,<br><br>        DEFENDANT. | COURT NO. 24-00016<br><br>PUBLIC VERSION<br><br>BUSINESS PROPRIETARY INFORMATION HAS BEEN REDACTED FROM PAGE 20. |

PLAINTIFF'S REPLY BRIEF
TO DEFENDANT'S RESPONSE TO THE MOTION FOR JUDGMENT ON THE AGENCY RECORD
AND RESPONSE BRIEF TO DEFENDANT'S MOTION TO DISMISS

## INTRODUCTION

Pursuant to U.S. Court of International Trade Rule 81(k) and the Court's Order of October 30, 2024 (ECF No. 34), Plaintiff Deer Park Glycine, LLC, by and through counsel, respectfully submits this response to Defendant's Combined Motion to Dismiss and Response to Plaintiff's Motion for Judgment on the Agency Record filed by Defendant, the United States. For the reasons set forth in this brief, the Court should deny Defendant's Motion to Dismiss because Plaintiff may invoke jurisdiction under 28 U.S.C. § 1581(c), or in the alternative, under 28 U.S.C. § 1581(i), to appeal the rejection by the U.S. Department of Commerce ("Commerce") to initiate a new scope ruling application concerning calcium glycinate. Moreover, for the reasons explained in this brief, Defendant's refusal to initiate a new scope ruling concerning calcium glycinate is inconsistent with its regulations, an abuse of its discretion, and is arbitrary

- 1 -

and capricious, and should be remanded with instructions to initiate a scope ruling proceeding concerning calcium glycinate.

### STATEMENT OF THE ISSUES

1. Whether the Court possesses jurisdiction over an appeal to Commerce's determination to reject a new scope ruling application; and

2. Whether Commerce's refusal to initiate a scope ruling proceeding was inconsistent with its own regulations, an abuse of its discretion, and arbitrary and capricious.

### STATEMENT OF FACTS

On August 14, 2023, Plaintiff filed a scope ruling application ("August 2023 Scope Ruling Application") asking Commerce to determine that calcium glycinate is covered by the scope of the antidumping duty orders on glycine from India, Japan, and Thailand and the countervailing duty orders on glycine from India and China (collectively, "Orders"). *See* ECF No. 15-11.[1]  On October 11, 2023, Commerce issued its final scope ruling on calcium glycinate ("October 2023 Determination"), finding that calcium glycinate is not a precursor of dried crystalline glycine and is not covered by the scope of the Orders. *Id*.  Plaintiff has appealed this October 2023 determination. *See* Court No. 23-238.

On November 29, 2023, Plaintiff submitted another scope ruling application for the same product ("November 2023 Scope Ruling Application"), providing additional evidence demonstrating that calcium glycinate is covered by the scope of the Orders. *See* C.R. 1-3. In the November 2023 Scope Ruling Application, Plaintiff asked Commerce to find that calcium

---

[1] Citations to the public record (P.R.) and confidential record (C.R.) refer to the record of the underlying administrative review. *See* Administrative Record Index (ECF No. 15). Because the determination at issue applied to four different antidumping and countervailing duty orders, the United States filed the determination on all four administrative records. For convenience, we refer to this as a singular administrative record and determination.

glycinate is covered by the scope of the Orders because, *inter alia*, calcium glycinate is a crude form of glycine, which is included in the scope of the Orders. *Id*.

The additional evidence that Plaintiff submitted in the November 2023 request included: (1) an excerpt from Commerce's 2012 ruling finding that "sodium glycinate is a crude form of glycine"; (2) evidence that a manufacturer may, similar to the sodium glycinate process for glycine, extract glycine out of calcium glycinate by the "addition of sulfuric acid to the calcium glycinate to deconstruct the calcium glycinate to form glycine"; and (3) excerpts from the original trade remedy petition and from other filings in the original trade remedy investigation showing that the term "precursors of dried crystalline glycine," as used in the current scope language, "covers products derived one step prior to the dried crystalline glycine (*i.e.*, glycine slurry), as well as other products derived one step prior to glycine slurry, such as sodium glycinate or calcium glycinate that are used as precursors to produce glycine." *Id*.

On December 28, 2023, Commerce rejected Plaintiff's November 2023 Scope Ruling Application ("December 2023 Determination"), finding it is "duplicative and otherwise unacceptable" pursuant to 19 C.F.R. § 351.225(d)(1)(i) merely because it "concerns the same product" as the August 2023 Scope Ruling Application. *See* December 2023 Determination, P.R. 8. On January 26, 2024, Plaintiff challenged Commerce's December 2023 Determination in this pending appeal. *See* Summons at 1, ECF No. 1; Complaint at 1, ECF No. 2.

The Court refused to consolidate the two cases, holding that the two actions did not share any common questions of law and were based upon separate administrative records. ECF No. 13. The Court also refused to include Plaintiff's August 2023 Scope Ruling Application as part of the record in this appeal — finding that this record is not incomplete

because the "August Scope Application was part of the record of a prior scope inquiry" — and further declined to supplement the record with the August 2023 Scope Ruling Application as additional record evidence.  ECF No. 26.

## SUMMARY OF THE ARGUMENT

This appeal contests Commerce's rejection of Plaintiff's November 2023 Scope Ruling Application.  Defendant's motion to dismiss for lack of jurisdiction should be denied because this Court has jurisdiction over the appeal either under 28 U.S.C. § 1581(c), or, in the alternative, under 28 U.S.C. § 1581(i).  Defendant failed to present support for its argument that the Court does not possess jurisdiction over this appeal under section 1581(c).  Even if the Court agrees with Defendant that jurisdiction under section 1581(c) is not appropriate for this appeal, the Court has jurisdiction over this appeal under section 1581(i) because no other statutory provision for the Court's jurisdiction applies to this appeal, and, contrary to Defendant's argument, the remedy through the separate appeal of Commerce's October 2023 Determination under 28 U.S.C. § 1581(c) jurisdiction is manifestly inadequate.  Denying the Court's jurisdiction on either ground deprives Plaintiff relief in response to Commerce's rejection of its scope ruling application without a proper basis.

Moreover, contrary to Defendant's responses, Commerce's December 2023 Determination is inconsistent with the plain language of its own regulations and the agency's intent expressed in the rulemaking history of 19 C.F.R. § 351.225(d)(1)(i).  Even if the Court were to find that Commerce's regulations allow it to reject scope ruling applications on the basis of being "duplicative," Commerce's refusal to initiate a new scope ruling concerning calcium glycinate, when faced with material evidence showing that its October 2023 Determination was plainly erroneous, is an abuse of its discretion and should be remanded.  Finally, Commerce has

initiated multiple scope rulings on same or similar products in the past, and its decision to treat the November 2023 Scope Ruling Application differently from them was a departure from those determinations that was made without an adequate explanation and thus should be deemed arbitrary and capricious.

ARGUMENT

## I.    THE COURT POSSESSES JURISDICTION OVER THIS APPEAL

This appeal contests Commerce's rejection of Plaintiff's November 2023 Scope Ruling Application. Defendant's motion to dismiss for lack of jurisdiction should be denied because this Court has jurisdiction over the appeal either under 28 U.S.C. § 1581(c), or, in the alternative, under 28 U.S.C. § 1581(i). Denying the Court's jurisdiction on either ground deprives Plaintiff relief in response to Commerce's rejection of its scope ruling application without a proper basis.

### A.    STANDARD OF REVIEW

"In the absence of specific legislative guidance to the contrary, the court relies on the general presumption in favor of reviewability. *See Asociacion Colombiana de Exportadores de Flores (Asocoflores) v. United States*, 13 Ct. Int'l Trade 584, 587, 717 F. Supp. 847, 851 (1989), *aff'd*, 901 F.2d 1089 (Fed.Cir.1990) (*citing Abbott Laboratories v. Gardner*, 387 U.S. 136, 87 S. Ct. 1507, 18 L.Ed.2d 681 (1967)).

This Court's jurisdiction is governed by 28 U.S.C. § 1581. Relevant to this case are subsections (c) and (i). Section 1581(c) grants this Court jurisdiction to review Commerce's scope ruling determinations. 28 U.S.C.S. § 1581(c); 19 U.S.C.S. § 1516a(a)(2)(B)(vi). Section 1581(i) embodies a "residual" grant of jurisdiction, which may not be invoked when jurisdiction under another subsection of § 1581 is or could have been available, unless

the remedy provided under that other subsection would be manifestly inadequate. *Fujitsu Gen. Am., Inc. v. United States*, 283 F.3d 1364, 1371 (Fed. Cir. 2002).

Nonetheless, Congress has provided the courts with broad residual jurisdiction under 28 U.S.C. § 1581(i) regarding, *inter alia*, Commerce's administration and enforcement of the antidumping and countervailing duty law. *Parkdale Int'l Ltd. vs. United States*, 31 Ct. Int'l Trade 1229, 1235, 508 F. Supp. 2d 1338, 1346 (2007).

### B. COMMERCE'S ARGUMENT THAT SECTION 1581(C) JURISDICTION IS NOT APPROPRIATE LACKS SUPPORT

Plaintiff properly alleged that 28 U.S.C. § 1581(c) and 19 U.S.C. § 1516a provide the Court jurisdiction over this appeal. *See*, Compl. Court No. 24-16, ECF No. 1. 19 U.S.C. § 1516a(a)(2)(B) identifies the "reviewable determinations" that may be contested under 19 U.S.C. § 1516a(a)(2)(A), including "[a] determination by the administering authority as to whether a particular type of merchandise is within the class or kind of merchandise described in an existing finding of dumping or antidumping or countervailing duty order" under subsection 1516a(a)(2)(B)(iv).

Defendant's argument that 28 U.S.C. § 1581(c) is not an appropriate jurisdiction rests primarily on the claim that the December 2023 Determination is not a determination within the scope of subsection 1516a(a)(2)(B)(iv). Def. Combined Mot. to Dismiss and Resp. to Pl.'s Mot., Court No. 24-16, ECF No. 33 at 9. In other words, Defendant is alleging that only a determination expressly ruling on whether the merchandise at issue is within the scope of the existing antidumping and countervailing duty orders would have been a reviewable determination as provided under subsection 1516a(a)(2)(B)(iv). Defendant, however, presented no support for its narrow statute interpretation. *Id.* Indeed, nothing in the statute expressly

excludes a scope ruling application rejection from subsection 1516a(a)(2)(B)(iv).  Even taking

the statute literally, Defendant ignored its own contention before the Court that Commerce's

December 2023 Determination was not based on the sufficiency of the scope ruling application.

Def. Resp. to the Pl.'s Mot. to Complete the Record, Court No. 24-16, ECF No. 23 at 9

("Commerce did not 'necessarily have to consult' the August scope ruling application, and in

fact declined to do so").  Rather, it averred that Commerce rejected the application simply

because it "concerned an identical product" that the prior scope ruling determined to be outside

the scope of the Orders.  *Id.* ("Commerce did not find the November application duplicative by

comparing it to the August application.  Instead, it compared the November application to the

October scope ruling and concluded that the November application concerned an identical

product.")  In other words, Commerce's "rejection" not to engage in the merits of the application

is a determination predicated on its implied intention to treat all calcium glycinate as not in-

scope.  Commerce's December 2023 Determination was akin to an "implied" determination that

calcium glycinate is not within the scope of the Orders, rendering jurisdiction under 19 U.S.C.

§ 1516a(a)(2)(B)(vi) and 28 U.S.C. § 1581(c) appropriate.

Defendant further contended that 19 U.S.C. § 1581(c) would not provide Plaintiff a path

for this appeal because "Commerce's decision was never published in the Federal Register nor

mailed to any party".  Def. Combined Mot. to Dismiss and Resp. to Pl.'s Mot., Court No. 24-16,

ECF No. 33 at 9.  However, Defendant is not contesting the timeliness of this appeal.  Rather, it

is asking the Court to dismiss the case for lack of subject matter jurisdiction.  The date of the

Federal Register notice or of the mailing — the trigger of the clock for judicial review under

section 1581(c) — is irrelevant to the issue at dispute.

### C.    IN THE ALTERNATIVE, THE COURT POSSESSES JURISDICTION OVER THE APPEAL UNDER SECTION 1581(I)

If section 1581(c) does not provide the Court the appropriate jurisdiction to review Commerce's December 2023 Determination, the Court, in turn, has jurisdiction over this appeal pursuant to section 1581(i), which confers "exclusive jurisdiction" to the Court over "any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for . . . administration and enforcement with respect to the matters referred to in . . . subsections (a)-(h) of this section."  28 U.S.C. § 1581(i)(1)(D). If  the agency's December 2023 Determination was not a scope determination covered by 19 U.S.C. § 1516a(a)(2)(B)(vi), Commerce's rejection of Plaintiff's November 2023 Scope Ruling Application at least constitutes the administration and enforcement of a matter referenced in subsection (c) of 28 U.S.C. § 1581 (*i.e.*, actions commenced under 19 U.S.C. § 1516(a)) because Commerce's decision concerns "[a] determination by the administering authority as to whether a particular type of merchandise is within the class or kind of merchandise described in an existing finding of dumping or antidumping or countervailing duty order."  *See* 19 U.S.C. § 1516a(a)(2)(B)(vi).  Further, no other statutory provision concerning the Court's jurisdiction applies to this appeal.  That leaves section 1581(i) as the only remaining jurisdiction under which the Court may review this action.

A plaintiff has the burden of establishing jurisdictional facts by a preponderance of the evidence.  *See McNutt v. Gen. Motors Acceptance Corp.,* 298 U.S. 178, 189, 56 S. Ct. 780, 80 L. Ed. 1135 (1936).  As the U.S. Court of Appeals for the Federal Circuit ("Federal Circuit") has explained, the "party invoking the {court's} jurisdiction bears the burden of establishing it. However, we must accept well-pleaded factual allegations as true and must draw all reasonable

inferences in favor of the claimant." *Juancheng Kangtai Chem. Co. v. United States,* 932 F.3d 1321, 1326 (Fed. Cir. 2019) (citing *Hutchison Quality Furniture, Inc. v. United States*, 827 F.3d 1355, 1359 (Fed. Cir. 2016) (internal quotation marks, brackets, and citations omitted). The court also may consider matters outside the pleadings to find jurisdictional facts. *Wuxi Seamless Oil Pipe Co. v. United States*, 893 F. Supp. 2d 1347, 1351 (Ct. Int'l Trade 2013) (quoting *Land v. Dollar,* 330 U.S. 731, 735 n.4, 67 S. Ct. 1009, 91 L. Ed. 1209 (1947)); *see also Cedars-Sinai Med. Center v. Watkins,* 11 F.3d 1573, 1584 (Fed. Cir. 1993).

Defendant concedes that 28 U.S.C. § 1581(i) would be the only remaining avenue available for the Court to review Commerce's December 2023 Determination should the Court accept Defendant's argument that section 1581(c) does not provide the appropriate jurisdiction to review this decision. Def. Combined Mot. to Dismiss and Resp. to Pl.'s Mot., ECF No. 33 at 9 ("Accordingly, for this Court to exercise jurisdiction, it must rely on the residual authority provided by 28 U.S.C. § 1581(i), which provides a 'broad residual' grant of jurisdiction provided by other subsections of § 1581") (internal quotations omitted). Defendant's only complaint is that Plaintiff is already seeking an appeal of Commerce's October 2023 Determination, which Defendant argues offers an adequate remedy to Plaintiff and thus precludes Plaintiff from seeking an appeal over the agency's December 2023 Determination under section 1581(i) jurisdiction. *Id.* at 10. Defendant's allegation is blatantly wrong.

Recourse under section 1581(c) for the appeal of Commerce's October 2023 Determination is manifestly inadequate because it does not provide the remedy Plaintiff seeks in the second scope action: a remand order directing Commerce to reconsider Plaintiff's November 2023 Scope Ruling Application, which contains additional evidence that Plaintiff purportedly included to establish that Commerce's October 2023 Determination was plainly erroneous.

A remand order to reconsider Commerce's October 2023 Determination in the first action, if so compelled by the Court, does not permit a reconsideration by Commerce of Plaintiff's additional evidence in the second action. The vast difference in evidence between these two scope actions could have led to a different ultimate outcome. Further, the Court's judicial review of Commerce's scope ruling in the first action hinges on the record evidence contained there. *OMG, Inc. v. United States*, 972 F.3d 1328, 1364 (Fed. Cir. 2020) (citing *Meridian Prods. LLC v. United States*, 851 F.3d 1375, 1382 (Fed. Cir. 2017) (internal quotations omitted) ("The question of whether a product meets the unambiguous scope terms presents a question of fact reviewed for substantial evidence."). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (internal quotations omitted). Even though the Court is not a fact finder in a judicial review, the evidence in the first scope action will affect the Court's decision as to whether Commerce's October 2023 Determination is supported by substantial evidence there. The first action, contesting Commerce's determination with a less robust application, does not present the same evidence to the Court and may not result in the same ultimate outcome to Plaintiff. To presume that two actions with decidedly different evidence would lead to the same ultimate outcome and remedy during remand is speculative and unreasonable.

Further, at the core of Defendant's allegation that the remedy for a challenge of a prior scope ruling concerning an identical product would be automatically adequate, is a presumption that all requests for new scope reviews of the same product would be futile, or not necessary, because Commerce will never change its scope determination of the same product regardless of the evidence on the record. This belief runs contrary to the agency's own intent in setting forth its scope regulations. Out of concerns for due process protection to interested parties, Commerce

expressly removed from its proposed 19 C.F.R. § 351.225(m)(1) a sentence that stated "if it had previously issued a scope ruling for an order with respect to a particular product, the Secretary may apply that scope ruling to all products with the identical physical description from the same country of origin as the particular product at issue, regardless of producer, exporter, or importer, without initiating or conducting a new scope inquiry under this section." *Regulations To Improve Administration and Enforcement of Antidumping and Countervailing Duty Laws*, 86 Fed. Reg. 52300, 52335 (Dep't of Commerce Sept. 20, 2021) ("Commerce agrees with the concerns expressed that if Commerce does not initiate or conduct a new scope inquiry based upon the filing of a scope application, but instead automatically issues a scope ruling that is applicable to all producers, exporter, or importers of that merchandise, such a procedure would not provide potential interested parties with adequate procedures to protect their interests."). Conversely, it would violate due process — which is exactly what Commerce intended to avoid in its regulatory making process for scope review procedures — by barring Plaintiff from gaining subject matter jurisdiction over its claim addressing Commerce's refusal to initiate a new scope inquiry simply because there is a pending action on a prior scope determination concerning the same product — despite the difference in record evidence for the two cases.

The sole case, *Trustees in Bankruptcy of North American Rubber Thread Co. v. United States*, that Defendant relies upon to support its argument is inapposite to this action. Def. Combined Mot. to Dismiss and Resp. to Pl.'s Mot., ECF No. 33 at 10. In that case, Commerce initiated the first changed circumstances review revoking the antidumping duty order at issue retroactively to a date that would cover unliquidated entries that had not been the subject of an annual administrative review of the order, which the domestic producer requested, instead of retroactively to a date that would cover all unliquidated entries still controlled by

U.S. Customs and Border Protection, which the respondent requested. *Trustees in Bankruptcy of North American Rubber Thread Co. v. United States*, 593 F.3d 1346, 1350 (Fed. Cir. 2010). The respondent appealed the first changed circumstances review, during the period when the domestic producer and the respondent settled. *Id.* As a result of the settlement, the two parties asked Commerce to initiate a second changed circumstances review to revoke the order retroactively to a date that covers all unliquidated entries, which the respondent had requested in the first changed circumstances review. *Id.* Commerce refused to initiate the second changed circumstances review, after which both the domestic producer and the respondent appealed the agency's rejection to the Court. *Id.* The appeal by the respondent over the first changed circumstances review was then stayed, awaiting resolution of its appeal of Commerce's refusal to initiate the second changed circumstances review. *Id.* The Federal Circuit held that the domestic producer could invoke section 1581(i) jurisdiction to appeal Commerce's refusal to initiate the second changed circumstances review, while the respondent was precluded from doing so as it "has available to it another route to the same ultimate outcome" with its pending action of the first changed circumstances review, and in fact it would have a "more favorable" remedy from the first action. *Id.* at 1352 ("Heveafil could get an order from the CIT compelling Commerce to change the effective date of the revocation, not just an order compelling Commerce to undertake a review that might lead to the effective date Heveafil seeks.") *Id.* The plaintiff respondent would have obtained the same ultimate outcome, if not better, in its appeal of the first changed circumstances review because, unlike the plaintiff

domestic producer there, the circumstances for the plaintiff respondent had not changed between the two reviews.[2]

Plaintiff here is in a vastly different situation.  Unlike *Trustees in Bankruptcy of North American Rubber Thread Co.*, the relief that Plaintiff could obtain from the appeal of the October 2023 Determination is not at all the same as the relief that Plaintiff could obtain from the appeal of the December 2023 Determination.  For Plaintiff, the record evidence in each scope case is different:  Plaintiff included additional evidence in the second scope ruling application to show that the October 2023 Determination is erroneous.  A re-submission of such a scope ruling application with additional evidence is well-intended and expressly permitted by 19 C.F.R. § 351.225(d)(1)(i), which states that "the applicant may resubmit the full application at any time, with all identified deficiencies corrected."  A re-consideration of the two separate and different scope ruling applications could thus lead to two completely different ultimate scope determinations by Commerce — during their respective remands if such a remedy was compelled by the Court — even though both applications concern an identical product.

Further, the two actions filed by the plaintiff respondent in *Trustees* and the two appeals by Plaintiff here have profound procedural differences due to their distinct fact patterns. In *Trustees*, the two appeals of the plaintiff respondent were so closely connected and similar that the first action was stayed pending the resolution of the second action, while the Court here considered the two scope applications so separate and different that it declined both Plaintiff's

---

[2] For the plaintiff domestic producer in the same case, however, the Federal Circuit found that "circumstances did change . . .  between the first changed circumstances review and the parties' request for a second changed circumstances review:  thanks to the settlement agreement between {the domestic producer plaintiff and the foreign respondent plaintiff}, there was no longer any interest on the part of the domestic industry in maintaining the antidumping duty order . . ."  *Trustees in Bankruptcy of North American Rubber Thread Co. v. United States*, 593 F. 3d 1346, 1352 (Fed. Cir. 2010).

motion to consolidate the appeals of these two determinations and Plaintiff's motion to include the August 2023 Scope Ruling Application on to the record of this appeal.  *See* Slip. Op. 24-35, May 31, 2024, ECF No. 13 at 5 ("[a]lthough the two actions are related and stem from some common facts, the ultimate legal analyses required for disposition of the cases do not overlap."); *see also* Ct. Order, ECF No. 26.  Defendant's reliance on *Trustees in Bankruptcy of North American Rubber Thread Co. v. United States* is plainly misplaced.

In sum, if the Court does not possess jurisdiction over a scope ruling application rejection under 28 U.S.C. § 1581(c), jurisdiction of this appeal under 28 U.S.C. § 1581(i) is proper because Plaintiff has met its burden of demonstrating that the remedy provided under section 1581(c) through an appeal of a different scope case is manifestly inadequate.

## II.    THE COURT SHOULD DETERMINE THAT COMMERCE'S FINDING IS INCONSISTENT WITH ITS REGULATIONS AND OTHERWISE ARBITRARY AND CAPRICIOUS

In its response, Defendant argues that Commerce's refusal to initiate a scope ruling proceeding, upon Plaintiff's November 2023 Scope Ruling Application to determine whether calcium glycinate is subject to the Orders is consistent with Commerce's regulations.  *See* Def. Combined Mot. to Dismiss and Resp. to Pl.'s Mot., ECF No. 33 at 10 *et seq.*; *see also* Commerce's Letter, "Glycine from the People's Republic of China, India, Japan, and Thailand: Determination to Reject the Scope Ruling Application on Calcium Glycinate" (Dec. 28, 2023) (P.R. 8, ECF No. 15-10) ("December 2023 Determination"); *see also* C.R. 1-3 ("November 2023 Scope Ruling Application").  In doing so, Defendant acknowledges that subsection (d) of Commerce's scope regulations -- the regulatory provision underlying Commerce's December 2023 Determination -- states that, if Commerce rejects a scope ruling application because it is "incomplete or otherwise unacceptable," it "will provide a written explanation of the reasons for

the rejection," and "the applicant may resubmit the full application at any time, with all identified deficiencies corrected." Def. Combined Mot. to Dismiss and Resp. to Pl.'s Mot., ECF No. 33 at 11; *see also* 19 C.F.R. § 351.225(d)(1)(i). Defendant also acknowledges that "there was no way GEO could have cured the deficiency in its application; any application for a scope ruling into calcium glycinate would be duplicative of the existing scope order, and would likely be rejected on that basis." Def. Combined Mot. to Dismiss and Resp. to Pl.'s Mot., ECF No. 33 at 14. Defendant, however, asserts that the referenced regulatory provision "does not preclude Commerce from rejecting a scope application on the basis that the identified deficiency is incurable." *Id*.

Defendant's reading of its own regulations runs contrary to the plain language and the rulemaking history of subsection (d), the provision that Commerce relied on in rejecting Plaintiff's November 2023 Scope Ruling Application. According to 19 C.F.R. § 351.225(d), when Commerce rejects a scope ruling application, after determining that the application is "incomplete or otherwise unacceptable," Commerce will provide a written explanation of the reasons for the rejection. 19 C.F.R. § 351.225(d)(1)(i). The applicant, however, is allowed to "resubmit the full application at any time, with all identified deficiencies corrected."

In the proposed rulemaking notice concerning subsection (d), which was adopted in the final rule without any changes, Commerce stated:

> Proposed paragraph (d), once a scope ruling application has been
> filed and appropriately served on all necessary parties, would allow
> Commerce 30 days to determine whether to accept or reject
> the scope ruling application. If Commerce determines that
> the scope ruling application is deficient or otherwise unacceptable,
> Commerce could reject it with an explanation. The applicant may
> correct the problems and refile the scope ruling application,
> restarting the regulatory deadlines. On the other hand, if
> Commerce does not reject the scope ruling application, then after

> 31 days, a scope inquiry would be deemed initiated. At that point,
> Commerce cannot reject the scope ruling application for
> deficiencies, but could demand supplemental information if
> necessary.

*Regulations To Improve Administration and Enforcement of Antidumping and Countervailing Duty Laws*, 85 Fed. Reg. 49472, 49478 (Dep't of Commerce Aug. 13, 2020). Commerce further explained in the proposed rulemaking notice that subsection (d) was intended to replace the informal scope ruling procedure that was available under the previous regulations. *Id*. Accordingly, after receiving a scope ruling application, Commerce would have 45 days "to either (A) issue a scope ruling based upon the scope ruling application and descriptions of the merchandise listed under paragraph (k)(1) pursuant to current paragraphs (c)(2) and (d), or (B) initiate a formal inquiry." *Id*. Commerce was concerned about the unnecessary delays and confusion created by the informal scope ruling procedure and decided to eliminate any distinction between an informal and formal scope inquiry procedure. *Id*. Instead, Commerce added the current subsection (d), which allows Commerce "30 days to determine whether to accept or reject the scope ruling application." *Id.*

Nowhere in the rulemaking history, however, does Commerce contemplate the possibility that it could reject a scope ruling application under subsection (d) solely because it is "duplicative" and preclude the applicant from resubmitting its scope ruling application. Instead, Commerce acknowledged that, when it rejects a scope ruling application, "the applicant may correct the problems and refile the scope ruling application, restarting the regulatory deadlines." *Id*. Commerce's outright refusal to initiate a scope ruling solely because the application concerns a product on which Commerce previously ruled, however, is not consistent with the regulatory text adopted by Commerce itself in 2021.

- 16 -

Next, relying on a statement made by Commerce in the proposed rulemaking notice,

Defendant argues that Commerce "contemplated the precise issue in this case." Def. Combined

Mot. to Dismiss and Resp. to Pl.'s Mot., ECF No. 33 at 11. Commerce's statement in

the proposed rulemaking notice that "there may be instances in which Commerce has already

expressly considered the product at issue, and thus a new scope inquiry is not necessary to

address the issue" was made in reference to proposed paragraph (m)(1), which stated, *inter alia*:

> If the Secretary has previously issued a scope ruling for an order
> with respect to a particular product, the Secretary may apply that
> scope ruling to all products with the identical physical description
> from the same country of origin as the particular product at issue,
> regardless of producer, exporter, or importer, **without initiating or
> conducting a new scope inquiry under this section**. In such
> instances, the requirements of paragraph (h) of this section will
> apply.

*Regulations To Improve Administration and Enforcement of Antidumping and*

*Countervailing Duty Laws*, 85 Fed. Reg. 49472, 49478 and 49498 (Dep't of Commerce Aug. 13,

2020). The referenced provision was removed by Commerce from subsection (m) in the final

rulemaking notice because Commerce recognized that such a procedure "would not provide

potential interested parties with adequate procedures to protect their interests." *Regulations To*

*Improve Administration and Enforcement of Antidumping and Countervailing Duty Laws*,

86 Fed. Reg. 52300, 52335 (Dep't of Commerce Sept. 20, 2021).

In other words, Defendant's reliance on Commerce's statements from the proposed

rulemaking notice in reference to a provision that was later removed from the regulatory text is

misplaced. These statements cannot have any evidentiary value for this Court or be read as

Commerce's explicit intent to reject duplicative scope ruling applications. On the contrary,

the mere fact that Commerce decided against codifying the proposed change in its regulations

shows that Commerce did not contemplate itself rejecting a scope ruling application solely

because it concerns a product at issue in another scope ruling.  While Commerce stated in

the final rulemaking notice that it can issue scope clarifications to address previously issued

scope rulings covering identical products, which is now codified at subsection (q) of

Commerce's scope regulations, Commerce did not exercise this authority in the underlying

administrative proceeding either.  Instead, in its December 2023 Determination, Commerce

relied on subsection (d) and rejected Plaintiff's scope ruling application, without giving Plaintiff

any opportunity to "resubmit the full application at any time, with all identified deficiencies

corrected," as required by its own regulations.  Commerce's administrative action is thus not

consistent with its own regulations.

Because Commerce's December 2023 Determination is "plainly erroneous or

inconsistent with the regulations", deference to the agency's interpretation here is unwarranted.

*Auer v. Robbins*, 519 U.S. 452, 461, 117 S. Ct. 905, 137 L. Ed. 2d 79 (1997).  On the contrary,

similar to *Glycine & More*, Commerce's December 2023 Determination is inconsistent with both

the plain language of the regulations and "with the intent the agency expressed at the time of

promulgation." *Glycine & More, Inc. v. United States,* 107 F. Supp. 3d 1356, 1364 (Ct. of Int'l

Trade 2015) (quoting *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994)). As noted,

Commerce expressed its intent at the time of promulgation that subsection (d) was intended to

allow the applicants of scope ruling applications rejected by Commerce to resubmit

their applications after correcting any deficiencies identified by Commerce in its rejection.

Commerce's December 2023 Determination, however, precluded Plaintiff from resubmitting

its application, resulting in a significant inconsistency with both the plain language of 19 C.F.R.

PUBLIC VERSION

§ 351.225(d)(1)(i) and the express intent of Commerce demonstrated in the rulemaking history of its 2021 amendments.

In sum, both the plain language of Commerce's regulations and its rulemaking history show that, while subsection (d) of Commerce's scope regulations allows Commerce to reject a scope ruling application within 30 days if it finds that the application is "incomplete or otherwise unacceptable," such a rejection cannot be for a reason that does not allow the applicant to "resubmit the full application at any time, with all identified deficiencies corrected." 19 C.F.R. § 351.225(d)(1)(i). Commerce's December 2023 Determination, rejecting the November 2023 Scope Ruling Application after finding that it is "duplicative and otherwise unacceptable," precludes Plaintiff from resubmitting its application, as explicitly allowed by Commerce's regulations, and thus is inconsistent with the regulations and should be overturned by this Court.

## III. COMMERCE'S REFUSAL TO INITIATE IS OTHERWISE UNREASONABLE AND AN ABUSE OF ITS DISCRETION

Moreover, even if, *arguendo*, Commerce's regulations allow it to reject duplicate applications without giving any additional opportunity for the applicant to resubmit the application — which it does not — Commerce's refusal to initiate a scope ruling application solely because it concerns the same product as the one at issue in the October 2023 Determination, without addressing the new evidence contained in the November 2023 Scope Ruling Application, was arbitrary, capricious, unreasonable and an abuse of its discretion.

Defendant asserts that, if Plaintiff's reading of the regulations is allowed, an applicant would be able to submit "the same application, over and over, without end, and would require Commerce to conduct a new, redundant scope inquiry each time." Def. Combined Mot. to Dismiss and Resp. to Pl.'s Mot., ECF No. 33 at 14. Defendant fails to recognize, however, that

Plaintiff's second scope ruling application was not the "same" as the initial scope ruling application on which Commerce ruled in October 2023. The second scope ruling application contained important additional evidence demonstrating why calcium glycinate should be covered as part of the scope of the Orders both as a "precursor of dried crystalline glycine" and as a crude form of glycine, both of which were explicitly named in the scope at issue.

Notably, the additional evidence in the November 2023 Scope Ruling Application showed that calcium glycinate, when used in glycine production, represented [

]. November 2023 Scope Ruling Application at 7 and Exhibit 13. This additional evidence was indeed significant because it showed that calcium glycinate can be used to obtain dried crystalline glycine with minimal processing. As such, the evidence highlighted that calcium glycinate is both a precursor of dried crystalline glycine and a crude form of glycine within the meaning of those terms as understood by the petitioners and Commerce at the time the scope language was drafted.

To be more precise: The additional evidence demonstrated that Commerce's October 2023 Determination created a large loophole in the scope language, rendering the Orders ineffective. For example, relying on Commerce's October 2023 Determination, a company located in a third country can purchase Chinese-origin calcium glycinate, perform minor processing to obtain a higher grade of glycine, and sell such glycine to the United States without paying the antidumping duties or countervailing duties on Chinese-origin glycine. Similarly, relying on Commerce's October 2023 Determination, a company in the United States can import Chinese-origin calcium glycinate without paying any antidumping duties or countervailing duties on Chinese-origin glycine, perform minor processing here in the United States to obtain a higher

BUSINESS PROPRIETARY INFORMATION
HAS BEEN REDACTED.

grade of glycine, and sell such glycine to end customers in the United States, directly competing with the petitioners of the Orders.

As demonstrated with the additional evidence in the November 2023 Scope Application, these circumvention scenarios were exactly what petitioners wanted to prevent at the time they drafted the scope language of the Orders — a scope comprehensive enough to cover all forms of crude glycine and all precursors of dried crystalline glycine. *See* November 2023 Scope Ruling Application at Exhibits 15-16. With its October 2023 Determination, Commerce is now encouraging companies to exploit this loophole Commerce itself has created in the scope of the Orders. By rejecting the November 2023 Scope Ruling Application solely on the basis that it is duplicative, without giving any regard to the additional evidence clearly demonstrating that its October 2023 Determination was plainly erroneous, Commerce acted unreasonably and abused its discretion.

"Courts retain a role, and an important one, in ensuring that agencies have engaged in reasoned decisionmaking." *Judulang v. Holder*, 565 U.S. 42, 53 (2011). They look "for a reasoned analysis or explanation for an agency's decision as a way to determine whether a particular decision is arbitrary, capricious, or an abuse of discretion." *Appleton Papers, Inc. v. United States*, 37 C.I.T. 1034, 1037 (2013) (citing *Wheatland Tube Co. v. United States*, 161 F.3d 1365, 1369 (Fed. Cir. 1998)). When Commerce is faced with "new facts or evidence {showing} that the original determination was erroneous," such a determination "will be revisited." *Magnola Metallurgy, Inc. v. United States*, 508 F.3d 1349, 1358 (Fed. Cir. 2007).

Here, when faced with new material evidence indicating that its prior ruling on whether calcium glycinate is covered by the scope of the Orders might be erroneous, instead of initiating a new scope ruling inquiry to reconsider its October 2023 Determination, Commerce decided not

to engage in any reasoned decisionmaking, and rejected the November 2023 Scope Ruling

Application solely because it was "duplicative."  Commerce's reasoning in denying

the November 2023 Scope Ruling Application, however, "entirely failed to consider

an important aspect of the problem." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut.*

*Auto. Ins. Co*., 463 U.S. 29, 43, 103 S. Ct. 2856, 77 L. Ed. 2d 443 (1983).  By rejecting

the application solely because it concerned the same product as the one at issue in the October

2023 Determination, Commerce disregarded new evidence indicating that its October 2023

Determination was factually inaccurate and erroneous.  This renders Commerce's determination

unreasonable, arbitrary, capricious, and an abuse of its discretion.  The Court should remand

Commerce's December 2023 Determination and instruct Commerce to initiate a new scope

ruling proceeding on calcium glycinate based on the November 2023 Scope Ruling Application.

## IV.  MULTIPLE SCOPE RULING PROCEEDINGS INITIATED BY COMMERCE ON THE SAME OR  SIMILAR PRODUCTS IN THE PAST ARE INSTRUCTIVE FOR THIS CASE

In its response, Defendant argues that the previous instances in which Commerce

conducted multiple scope proceedings on identical or similar products are not relevant to the case

at hand because they predate Commerce's new scope regulations, which became effective in

2021.  Def. Combined Mot. to Dismiss and Resp. to Pl.'s Mot., ECF No. 33 at 16.  Accordingly,

Defendant asserts, these examples are not "informative as to Commerce's practice under

the current regulations."  *Id.* at 17.

Defendant's assertion fails to recognize that neither the current version nor the previous

version of Commerce's scope regulations permits Commerce to reject scope ruling applications

simply because they are duplicative.  Thus, for the purposes of this Court's analysis as to

whether Commerce's December 2023 Determination was a departure from its past precedents

that was made without an adequate explanation, and thus is arbitrary, the amendments to the regulatory language are immaterial.

Specifically, the current version of the regulations simply states that Commerce can reject a scope ruling application if it finds it is "incomplete or otherwise unacceptable." In doing so, Commerce must provide "a written explanation of the reasons for the rejection," and the "applicant may resubmit the full application at any time, with all identified deficiencies corrected." Commerce's scope regulations before 2021 similarly did not contemplate that Commerce would reject a scope ruling application without providing an opportunity for the applicant to "cure" the application. In practice, even before 2021, Commerce regularly rejected scope ruling requests that it found to be incomplete, and provided the applicants an opportunity to refile the rejected scope ruling applications. *See, e.g.*, Letter from Commerce to Spin Master, Inc., "Scope Ruling Request on Narrow Woven Ribbons with Woven Selvedge from The People's Republic of China (A-570-952; C-570-953)" (July 24, 2020) (Barcode: 4005577-01). On the contrary, Defendant is unable to pinpoint a single instance where Commerce actually rejected a scope ruling application simply because it was duplicative.

In sum, neither the pre-2021 version nor the current version of the scope regulations allowed Commerce to reject applications simply because they are "duplicative." Thus, Commerce's multiple scope rulings initiated on the same or similar products before 2021 are instructive for this Court.

In connection with the trade remedy orders on aluminum extrusions from the People's Republic of China, Commerce initiated at least two scope rulings covering the exact same product — curtain wall units. *See Notice of Scope Rulings*, 78 Fed. Reg. 32372 (Dep't of Commerce May 30, 2013) ("curtain wall units and other parts and components of curtain walls

**PUBLIC VERSION**

are within the scope of the antidumping duty and countervailing duty orders"); *see also Notice of Scope Rulings*, 79 Fed. Reg. 30821 (Dep't of Commerce May 29, 2014) ("Yuanda's curtain wall units that are produced and imported pursuant to a contract to supply a curtain wall are within the scope of the orders."). Defendant asserts that the information provided by Plaintiff concerning these two scope rulings is not sufficient "to determine if these products are identical." *See* Def. Combined Mot. to Dismiss and Resp. to Pl.'s Mot., ECF No. 33 at 17. The referenced scope rulings at issue, however, make it clear that both addressed the question of whether "curtain wall units" are covered by the scope of the aluminum extrusion orders. The 2012 scope ruling describes "curtain wall units" as "aluminum extrusion framed non-weight bearing exterior wall, secured to and supported by the structural frame of a building." *See* Memorandum from John Conniff to Christian Marsh, "Final Scope Ruling on Curtain Wall Units and Other Parts of a Curtain Wall System" (Nov. 30, 2012) (Barcode: 3108212-01) at 3. The 2014 scope ruling describes "curtain wall units" as a unit consisting of "an aluminum extrusion frame, which meets the specifications for a particular building, and glass or another infill material," and describes "curtain walls" as "a combination of curtain wall units that form a non-load bearing wall on a floor or part of a building." Memorandum from James Terpstra to Christian Marsh, "Final Scope Ruling on Curtain Wall Units that are Produced and Imported Pursuant to a Contract to Supply a Curtain Wall" (March 27, 2014) (Barcode: 3191338-01) at 6. As the Curtain Wall Coalition, the requestor of the 2012 scope ruling, emphasized in its comments on Yuanda's 2014 scope ruling request, the curtain wall units at issue in the 2014 request are "**__identical__** to the products found to be within the scope in the Investigations Scope Memo and Curtain Wall Parts Scope Ruling." *Id.* at 12. Yet, this did not stop Commerce from initiating a new scope ruling

proceeding in 2014 to consider whether Yuanda's curtain wall units are included within the scope of the aluminum extrusion orders.

Further, as previously explained, in connection with the antidumping duty order on *Petroleum Wax from the People's Republic of China*, Commerce initiated at least two scope rulings addressing identical products: *Petroleum Wax Candles from the People's Republic of China, Final Scope Ruling*, A-570-504, "Leader Light, Inc." (Dec. 12, 2002) (candles containing less than 50% petroleum wax excluded from Order for not satisfying the Commission's definition of domestic like product); *Petroleum Wax Candles from the People's Republic of China*, Final Scope Ruling, A-570-504, "Avon Products, Inc." (Nov. 17, 2003) (candles containing less than 50% petroleum wax excluded from Order for not satisfying the Commission's definition of domestic like product). *See Target Corp. v. United States*, 578 F. Supp. 2d 1369, 1372 and n. 2 (Ct. of Int'l Trade 2008).

In sum, Defendant's attempts to explain away clear evidence demonstrating that Commerce has indeed initiated multiple scope rulings addressing the same or similar products in the past should be disregarded. Neither the pre-2021 version nor the current version of Commerce's scope regulations allows Commerce to refuse to initiate a scope ruling proceeding solely because the request concerns a product previously addressed by Commerce in another scope ruling inquiry. In fact, there have been various instances where Commerce initiated multiple scope ruling proceedings addressing the same or similar products, such as curtain wall units subject to the aluminum extrusion trade remedy orders and candles containing less than 50% petroleum subject to the *Petroleum Wax Candles* trade remedy orders. Commerce's treatment of the November 2023 Scope Ruling Application constitutes a departure from prior determinations that was made without an adequate explanation, and should be deemed arbitrary

and capricious.  The Court should remand Commerce's December 2023 Determination for further deliberations.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's Motion to Dismiss the Complaint and that it reject Defendant's arguments in its Response to the Plaintiff's Motion for Judgment on the Agency Record.

Respectfully submitted,

/s/ David M. Schwartz
David M. Schwartz
Michelle Li
Kerem Bilge

**THOMPSON HINE LLP**

1919 M Street, NW, Suite 700
Washington, DC  20036-3537
Telephone:    (202) 263-4170
Telefax:        (202) 331-8330
Email:          David.Schwartz@ThompsonHine.com

*Counsel to Deer Park Glycine, LLC*

December 3, 2024

<u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that this brief complies with the word limitation of Court of International Trade Standard Chambers Procedures § 2(B)(1) and contains approximately 7,455 words, excluding the parts of the brief exempted from the word limitation.  In preparing this certificate of compliance, I have relied upon the word count function of the Microsoft Word processing system used to prepare the brief.


/s/ David M. Schwartz
David M. Schwartz

**THOMPSON HINE LLP**

1919 M Street, NW, Suite 700
Washington, DC  20036-3537
Telephone:  (202) 263-4170
Telefax:      (202) 331-8330
Email:        David.Schwartz@ThompsonHine.com

*Counsel to Deer Park Glycine, LLC*

December 3, 2024

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE:  THE HONORABLE JOSEPH A. LAROSKI, JR., JUDGE**

| |
|---|
| DEER PARK GLYCINE, LLC,<br><br>                              PLAINTIFF,<br><br>       V.<br><br>UNITED STATES,<br><br>                              DEFENDANT. |

**COURT NO. 24-00016**

**PROPOSED JUDGMENT**

Upon consideration of Plaintiff's Motion for Judgment on the Agency Record,

the Defendant United States' response thereto, and all other papers and proceedings had herein,

it is hereby

**ORDERED** that the Motion for Judgment on the Agency Record filed by the Plaintiff is

granted; and it is further

**ORDERED** that this matter is remanded to the United States Department of Commerce for

disposition consistent with the Court's final opinion.

**SO ORDERED.**

_____
Joseph A. Laroski, Jr., Judge

Dated:    _____
New York, New York